Before we begin our regular proceedings this morning, we have a motion from one of our colleagues. Yes, at this point I would like to move the admission of Benjamin Hong Ha. He's a member of the Bar and in good standing with the highest court of California. I have intimate knowledge of his credentials since he's been my law clerk now for the past year, and I know very well how talented he is. He was an undergrad at Vanderbilt University where he has a Bachelor of Engineering in Biomedical Engineering. He then was in the Patent Office, was a patent examiner, and worked at Finnegan Henderson after that for a number of years. And now, of course, capping all that off, he has clerked for me. So we know he's got all the qualifications you could need to have to be a member of this Bar. And in addition, he is just a wonderful guy to have with us all, and I and all of us law clerks think that. So I'd like to move his admission. I'm very pleased to grant the motion. He didn't even have a dissent. Thank you very much for your great right hand. You saw this where you will report yourself as an attorney and counsel to this court, uprightly and according to the law, meeting the support of the Constitution of the United States. I do. Congratulations. Welcome. Welcome. The first case for argument this morning is 14-1028, QQ versus Diginex Technologies. Mr. Sackstetter? Yes, Your Honor. You're ready. Good morning, Chief Judge Prost. Good morning, Your Honors. My name is Michael Sackstetter. I represent Diginex Technologies in this action. I'd like to reserve five minutes of my time for rebuttal, if I may. Diginex is asking this court to reverse the district court's determination regarding the indefiniteness of the claims of two patents, the 303 patent and the 424 patent. The district court was incorrect in doing so as a matter of law. This is a question that is, of course, reviewed de novo. And we have a new precedent to consider today from the Supreme Court. But I was going to ask you about that. That precedent seems to me would necessarily help you, since if anything it lightened the load in terms of proving indefiniteness, and the district court judge here applied the more stringent precedent on the preceded Nautilus, right? I actually think that the language and the reasoning of Nautilus actually is helpful in this case. So it's tighter now than insolubly ambiguous? No, I'm not saying that. I'm saying that each case is different. Each claim term that is alleged to be indefinite is different. And in this case, I think the way that the Supreme Court is approaching this issue is a way that I think dovetails very specifically, particularly with the 303 patent. If I could go to the term there that is at or near and discuss that first. And I'd like to first quote from Nautilus. Nautilus twice sets out its standards, which is requiring that a patent's claims viewed in light of the specification and prosecution history inform those skilled in the art about the scope of the invention with reasonable certainty. Reasonable certainty. And then the second time the Supreme Court gives that formulation, it gives, I think, an important gloss. The definiteness requirement so understood mandates clarity while recognizing that absolute precision is unattainable. And I think this is a perfect case for a situation where absolute precision is just simply unattainable. The term at or near is used in this claim, and I'm going to condense the language slightly, but the system is configured to control a rate of sale. Are you saying you can't be clearer than at or near expiration time? The issue is that it's contextual. I mean, you can easily be a lot clearer. You could say within 10 days of expiration time or within 10% of the remaining time or something like that. If one were to do that, I beg your pardon, Your Honor. If one were to do that and were to obtain the coverage to which this claim is entitled, then one would have to have an infinite number of claims. The problem is that this is contextual. If you're selling Hummel figurines that are selling one every two weeks, it is very difficult to hit at or near in the same percentage or the same time frame than if you're selling something that is selling one every second, you know, concert tickets at the beginning of the sale of a concert or a TV. Yeah, but you have a public notice requirement, and you've got to give the public something to know whether or not they're infringing or not. Did your expert seem to really not be helpful to your case? I mean, he was asking questions like, is halfway through the expiration time, would that meet the claim limitation? And his answer was, I don't know. I doubt it. It depends on the context, Your Honor. It depends on what is being sold. And it's exactly like the search source case where the claim term at issue there was goods and services. And you didn't know what they were. The construction had standardized versus non-standardized goods. You didn't know what they were until the market was selected. Then it became clear. It's contextual. So even though when you look at the claim without the context from the market, you know that you can't tell based on how it's going to be applied. As soon as you know the market you're talking about, Well, sometimes that's true in a lot of circumstances, but it seems to me typically sometimes you can have a formula. You're right, that what the time frame is is dependent on three variables. So at least you can specify what those variables are so that one knows how it's computed. None of that seems to be present in the current limitation. Well, the specification takes a different approach here. It says, in one embodiment, the processor of the pricing server is configured to attempt to dynamically price the product to sell the last product at the last minute of the last day. So the idea is that you're trying to hit, you're actually, your goal is at. But if you were going to claim at, then it could never be infringed because you would be, So the question is, okay, if that's the at, what are the parameters of the near? If one day is the at, then it's near with a 10-day span, a 20-day span, a 30-day span. That's the problem with this limitation. Well, the portion of the specification didn't say one day. It said the last day of, the last minute of the last day. But the problem is here. So then if that's at, the last minute of the last day, then what is near? I think what is contemplated here is configuring the server to control the rate of sale in order to sell out or deplete the inventory at or near the expiration time. And the idea is that you're trying to get at. That's what Dr. Seamus testified in the Markman hearing. He said the algorithm is always working to try to sell out at the expiration time. We understand that can't be achieved in general. What you're trying to do is get as close to at as you can. But if you said at, then it would be impossible to imprint. Isn't near an infinite number of different possibilities? It is different possibilities in different contexts. But in this court, There are no boundaries to it, though. This court is, If you have two very, very expensive bases and you want to sell them in the next 10 years because they're so expensive and you don't think there's a big market for them, at or near could be five years. That's what Dr. Seamus was testifying. And that's the way the claims are. Well, isn't that part of the problem? He said it could be seconds, it could be hours, it could be days, it could be months, it could be weeks. I mean, at some point, you know, if you were the putative infringer or the alleged infringer, you've got to understand at what point are you going to be infringing? If the claim is being applied to, you know that. So if you're designing the system to sell concert tickets, If I'm selling concert tickets, what is near? Then it is, you try to configure the system so that it sells out at. Because if you look at the rest of the claim, and these are the limitations that were added. So you can't even answer this for concert tickets, can you? Because the near is different for a Jay-Z concert versus some, you know, something else. I just stopped at Jay-Z. You know, I mean, because they're going to sell at different rates. That's exactly right. That's what Dr. Seamus was saying. That's what the specification said. You can't tell specifically. What's the real invention here? What's the real invention? It is a system of servers that automatically adjust prices in order to reach this goal or come as close as possible to this goal of selling out at a near. These servers aren't any kind of special server, are they? There's a particular configuration of servers. But they're just general processors. They can just be regular computers. They are programmed in order to perform particular things. I guess you may sense where I'm going with this. I do. But, I mean, after CLS, how could we ever find this patentable under 101? Well, let me just ask you, are there patentable defenses raised in this case? There was a motion to dismiss under Section 101. Oh, there was. The district courts denied it without prejudice, determining that claims need to be construed and so forth at that point. But just to answer your question, briefly, I don't think this preempts the whole range of subject matter that is the subject of the claims. Well, that's not the only criteria in CLS. It isn't. But it's one important test. And just to give, you know, this is an argument about a different issue, but just to address this briefly, for your honor. I think that, you know, if you look at the prosecution history, you'll see that there were other implementations that claims were rejected over that were different, and the claims were amended to get beyond those. And if this preempted all mechanisms for implementing the particular idea, then there wouldn't have been any priority. But the idea itself, dynamic pricing, is, I mean, I hate the term abstract idea, but the Supreme Court uses it, so it seems like a pretty abstract idea to me. There are numerous, there are numerous patents on abstract pricing. In fact, Dr. Seamus has one himself that does it, on abstract pricing, on dynamic pricing. I don't see patents anymore after CLS, though. I mean, that's the problem. If it's an abstract idea, and you're doing it on general purpose computers, I don't see how it's patentable. I understand this hasn't been raised, so I won't take up too much of your time. Getting back to indefiniteness, is it your position that anyone who is claiming that a patent claim is indefinite has to have an expert witness? It is the burden of proving that invalidity is clear and convincing evidence. In this case, there was an expert that testified on one side, and no expert that testified on the other. I just don't know what the source of their evidence is. Ultimately, the court can consider evidence, no matter who puts it in, for any purpose, and your expert didn't really help you that much. I mean, he claimed at or near could be after the final time frame when you want it to sell out. I mean, he wasn't the best expert for you. He did say that it could be after, but I think that's consistent with the specification for the term at or near. Now, there are other limitations that were also added, the where-in clauses that were added, that suggest that it all happens before the expiration time, but that wasn't what he was talking about in his testimony. What was your answer to Judge O'Malley's question with regard to whether or not an expert is required or not? I think that evidence is required. I think that often the only evidence there is, besides the intrinsic record, is an expert witness. And in this case, the other side, and certainly without convincing evidence, the other side needs to come forward with some evidence, and I don't believe they did. Why don't we hear from the other side? Mr. Shelton. Good morning, Your Honors. May it please the Court, Barry Shelton for Appellee QQ. Your Honors have seized on one of the central issues that has been presented by the appellant, which is the suggestion that an expert witness is somehow required. And Chief Judge Prost, as you observed, and Judge O'Malley, as you also observed, their expert was not helpful to DIGINEX whatsoever. In fact, their expert was, if anything, helpful to QQ. Dr. Shamos is not just a person of ordinary skill. I was stunned when I looked at his resume, which is in the appendix at A1489, to find that he not only has six technical degrees from prestigious Ivy League colleges, he's also a lawyer. He's been a patent lawyer since 1981. No wonder he couldn't give a straight answer to a question. And, Your Honor, he's been a member of this bar since 1985. So he's admitted to the bar of the Federal Circuit. And this person of extraordinary skill, with all this background, who at the time of his engagement by DIGINEX had represented 128 parties in patent matters, was unable to proffer a construction for either patent. But let's go to the point that your friend on the other side made, which is that whatever you think the Supreme Court meant to do with respect to Nautilus, I mean, the Supreme Court said it was using different words, but sort of conceded that it wasn't really changing the standard that much. But reasonable certainty really just has to be reasonable. I mean, you know, doesn't context matter? I mean, if you use a phrase that once it's put in context, you don't need somebody of extraordinary skill. You just need somebody with common sense to know what that would mean. That's correct, Your Honor. And the problem with the 303 patent is that there's no context. Dr. Shamos admitted in his deposition that there was no teaching in the patent specification about what at or near means. We know at means what the claim term that had been previously used all throughout prosecution until the very end, which was by the expiration time. So at and by, that's easy. So the problem with the 303 patent is there's not a single sentence about what near means. And so based on the lack of intrinsic evidence, and there's nothing in the prosecution history, save for the examiner's amendment that made this change somewhat mysteriously right at the very end. So because there's no context, there's no way that this patent satisfies the very important public policy of informing those of ordinary skill and art exactly what's excluded by this patent. But what would be sufficient in that regard? I mean, if you had a few embodiments and they described near within certain parameters, you could still be arguing that that's not all-inclusive, that that doesn't cover it, and that that's not sufficient to give certainty to the claim term, right? I agree wholeheartedly, Your Honor. It's like the Exxon research case in this court where there was a time limitation, much like the one at issue, and there it was for periods sufficient. But that was in the context of a chemical reaction, and there was ample context given in the specification. And in fact, the touchstone was for a period sufficient for the catalyst to be activated to 30%. And so that gave a touchstone to the person of ordinary skill and art that's missing here in the 303 patent. There's simply nothing. And so Diginex had to resort to using Dr. Shamos, who has unqualified experience, not just as a technical expert and as a professor, but as a lawyer and a member of this bar, and he was utterly unable to provide any rationale by which a person of ordinary skill could possibly fathom what this means. And again, going back to Judge Post's point, maybe it's because he was trying to be too educated on this. I mean, the common sense would say that if you're selling hotel rooms at or near, would have to be within probably 24 hours, whereas if you're selling concert tickets, it could be within a couple hours or even a couple minutes. I don't, I mean, don't, doesn't, don't you have to use common sense when reading these terms, too? I believe that that's correct, Your Honor. In every case when interpreting the claims, but where the patent doesn't give any context or teaching whatsoever, and it's left as depending on the context, and that by itself is not fatal. That doesn't mean that the claims are indefinite, but where there's no context given, how could a person of ordinary skill ever fathom what these claims cover and what they don't? And what we've heard from the appellant this morning is that it depends, and that's fine. There are many cases that this Court has ruled upon in which claims have been held definite when that was the situation, but in those cases, the specification or the file history always gave context, always gave a teaching, and that's totally absent here. With regard to the process question that Judge O'Malley raised about whether or not an expert was required from your side, I mean, you all took a risk. I mean, under your view, Dr. Shaman's under-cross-examination gave you sufficient basis to make a strong argument here, but it didn't happen, and where would that have left you? I mean, he could have come up with some analysis that led to a conclusion that it's certain. Where would that have left you in terms of your case? Your Honor, where it would have left us in this particular case is that we would be arguing exactly what we have below and today, which is that the intrinsic evidence, we don't need an expert to tell us what the patent doesn't say. The expert in this case happened to agree, but the Court was able to determine... to mean X, Y, and Z, right? Isn't that sufficient? It's not, Your Honor, because the patent has to teach either the specification, the written description, or the file history have to, in the first instance, inform a person of ordinary skill what it means. Common sense says what the patent is teaching is something is selling out very quickly and is going to clearly sell out well before the deadline, then you can raise the price. If it's selling out too slowly and you might not get sold out before the deadline, you lower the price. And so the context of how far away the deadline is and how many items that you have to sell, isn't that enough just to understand what near could mean? It's not, Your Honor, because at or near is a limitation, and so if the inventory of depleted items isn't sold by that time frame, whatever it means, then there's no infringement. And you could be assured that if this case proceeded below... I mean, there aren't that many variables. That's the problem that a skilled artist can come up with them. If you have a set time period, say, you know, a year until this concert, sometimes they're booked well in advance, you have 100,000 tickets, and then you start calculating the rate of sale. If it's, you know, those are things, it's just math. You can figure that out. You know, if they're coming back, like my client says, you raise the price until the rate of sale matches the time period. And I agree, Your Honor. You can do that with anything. You can do that with anything. The problem is that, as Your Honor asked the appellant about the issues with CLS and Section 101 here, this patent attempts to cover the very broad category of dynamic pricing. The problem is that the algorithm for selling out at or near isn't taught. And so during a district court case, you could expect that their expert would say, whatever you do is what infringes. So there's no public notice here that's provided by the patent or its file history. And what effect is it that it was the examiner that added the at or near at the same time that the examiner required additional limitations with respect to how to adjust the price? It is, it's not probative of why it was added. The examiner stated at A1737 in the joint appendix that the reason for the examiner's amendment was after discussion with the applicant to place it in better form for allowance. So we don't know who requested it, but it seems, and this is conjecture, I apologize, but it seems unlikely that the examiner would have gone to column 35 of the patent and taken at or near and replaced by the expiration time with at or near. So it's very likely that the applicant requested that to get broader claim scope. And unfortunately, they've swerved into indefiniteness. Your Honors, if I may, I'd like to turn to the 424 patent and I have a board and if it pleases the court, I'd like to diagram the issues here with Dr. Seamless's shifting sands of his testimony as to the A process or D process. Well, your friend didn't really raise that patent at all. You can take a couple minutes to do it. We've got your briefs so we'll know what you want to say about that. On the 424 patent? May I diagram it, your Honor? Thank you. The joint appendix at A27, A28 is the party's agreed way to show Claim 1 and Claim 16 of the 424 patent and that was by referring to Let me just ask you, I mean, a lot of your case with regard to that, so you can put down your marker, it has to do with what the expert, if I'm recalling this right, what the expert said or didn't say or whether or not he changed the number he was referring to, whether it was A4 or A5 from his deposition to his testimony. I mean, people make that mistake all the time. If we take what he actually said at trial in terms of where he was mapping, it seems to be reasonable, at least to me, that one would take the parameters and be able to identify the A4, I guess, as matching whatever the other number is. Why is that not right? It's not right, Your Honor, because all that has happened is Dr. Shamos has, as you pointed out, he's gone from one theory to another theory and these are not mere typographical problems but show that despite all the time that he undoubtedly spent on this case, he was unable to come up articulately with a single mapping that past semester. So we have the shifting... Well, that's your view of the world and maybe that you convinced the District Court of that but it seems to me that if you take, now I'm looking at this T3 and you take the processor and you know you're dealing with sealed criteria, it makes perfect sense to me if you're going to pick between A processor and A4 versus A5, you go to A4 and I think that's what he said in his testimony, right? He did, Your Honor. The issue here is that as this court has occasionally remarked upon the manual of patent examining procedure and this court did in the Baldwin graphic systems case which is in the briefing here today, in section 2173.05E of the MPEP which was cited in our responsive brief, says, similarly, if two different levers are recited earlier in the claim, the recitation of said lever in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended. The problem here as the district court said, calling this the multiprocessor mess, is that simply picking out one species of the genus of all the different configurations that might infringe this claim is not sufficient. The parties agreed that if the claim was limited to the single processor configuration, then it's sufficiently clear because we don't need to do all the hard work of figuring out which the processor goes with which A processor. But in the multiprocessor context, there's still so much ambiguity about what the applicant meant because it is on its face ambiguous with all these different. Was the 101 issue raised with respect to both patents? Your Honor, it was. And then there was a motion to dismiss and that was not granted with regard to both patents? Correct, Your Honor, and it was denied without prejudice and the judge indicated that he would hear that after Markman and then, of course, he granted the summary judgment motion of indefiniteness. If you have no other questions, thank you, Your Honor. Thank you. Very briefly, to address the 424, it is not  Seamus who submitted that mapping. In the post-Markman briefing, it was also QQ itself. The specific questions were about QQ. And  special master said, well, sometimes the judge likes to see a chart or a map rather than a construction in words and suggested that the parties might want to submit one. QQ submitted one. It's identical to the one that Vision X submitted. And QQ's post-Markman brief says that such a construction is the only type that would provide a unique map readily understandable by the fact finder or the public, including any potential infringers. Now, QQ did say that each A processor had to be separate. I don't think that's consistent with the law, but they did say here's a mapping that would actually be readily understandable by the public. But how do you get around the fact that ultimately the court made a determination that because your own expert couldn't seem to be consistent on what the mapping should be, that your expert's not sure where it should map and that even if QQ agreed with that, he didn't find it to be determined. He provided guidance. Dr. Seamus provided guidance on what the mapping should be. I think the mapping is obvious from a careful reading of the claim and both points that QQ's counsel raised. One thing he said in paraphrasing, if the inventory isn't sold by the expiration date, there's no infringement. I don't think that's what the claim requires. The claim actually is a system claim and the relevant claim limitation is wherein the processor is configured to control a rate of sale in the  or near the expiration date or in order to deplete the inventory at or near the expiration date. It isn't. The focus is on and it is expounded upon in the two following wherein clauses in actually targeting that specific expiration date. That's the date when the seller wants to sell out. And you want to configure your processor so that when you hit it, you come as close as you can. And that's what the specification says. So near as close as you can? It is. This is important because the specification doesn't really quite say that. The specification tells us what at is and then it talks about getting near there. So where in effect tells us what parameters you give to me? The specification says that you attempt to hit the expiration time. But there is at least an implicit acknowledgment that you're never going to be able to do that. If the expiration time is noon, you're never going to hit it. You'll hit it at 1159.59 or you'll hit it at 11am or something. Your argument makes sense only if you put the gloss that Judge O'Malley suggested in the question which is if you apply common sense to this and then it depends on what market you're looking at and you can probably figure it out. The question that that begs me is what's the invention? The invention is the system of servers and processors that are configured in order to achieve this goal. And I think that a person of ordinary skill in the art is deemed to have common sense in reading a claim like this. Thank you. We thank both counsel for the cases submitted.